PRO YO STY, J.
The plaintiff in this suit had occasion, in his capacity of warehouseman of the defendant company, to take a sample from a barrel of varnish. The regular way of doing this would have been to have rolled the barrel from the dark place where it was to a place where there was more light and knocked out the bung and lowered a vial into the barrel. But, in order to do this,' several barrels which stood in the way would have had to be moved, and this would have taken time, and it was within 15 minutes of the time for closing, so plaintiff went at it in a quicker way, which was to bore a hole in the barrel where it stood and catch the desired quantity of the varnish as it spurted out. For that purpose he told his assistant to get a lantern while he procured a brace and bit, and the two went to where the barrel was, and plaintiff bored a quarter-inch hole into the barrel about eight inches from the top, and began catching the oil in a vial as it spurted out. I-Ie says that this barrel was marked, “Special Turpentine Yarnisli,” and that he had been told that it contained turpentine japan varnish, a nonexplosive, “but that it seemed to be benzine, and the moment the lamp got near it it formed a vacuum and the stuff flew out and set the place afire,” and set his clothes afire, and burned him very severely. His assistant gives a different version. He says: “After Wade cut the hole, the stuff spurted out on him, and I remarked, .‘You better get out of there, Courtney. You are getting full of the stuff;’ and he said, ‘Lower the lamp a little bit;’ and just as I lowered the lamp the stuff caught. Q. Was there any explosion or simply that *240 the stuff caught Are? A. Just simply caught fire; there was no explosion, sir.”
Another way in which plaintiff might have avoided all danger of fire would have been to have used, instead of the lantern, with its open flame, an electric bulb at the end of a cord, provided expressly for that purpose. He says this electric bulb was out of order; but the evidence shows the contrary. It was tested a few moments after the fire, and was used the next morning for cleaning up the very place where plaintiff would have had to use it. The learned counsel for plaintiff suggests that it was put in order after the fire; but the positive testimony is to the contrary.
The negligence which the plaintiff imputes to the defendant company is in having kept so dangerous an article as benzine varnish under semblance of turpentine varnish, and in having suffered the electric light to remain out of order. The conclusive proof is that the varnish was turpentine varnish, as it purported to be, and not benzine varnish. In fact, the testimony of plaintiff himself, taken as a whole, would dispose of the theory of benzine having entered into the composition of the varnish. And the conclusive proof is that the lights were in good order.
The jury found against plaintiff, and we fail to find any ground whatever upon which defendant could be held responsible. Plaintiff’s injuries were excruciatingly painful, and he has been most unfortunate, but not through any fault of defendant.
Judgment affirmed.